**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2: 17-CR-164(4) |
| vs. | : | CHIEF JUDGE SARGIS |
| ISAIAS ALVARADO, | : | |
| Defendant. | : | |

**DEFENDANT ISAIAS ALVARADO'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE SEIZED FROM: (1) 2004 WHITE CHEVY EXPRESS CARGO
VAN, OHIO REGISTRATION NUMBER PID-9515 AND (2) 2007 WHITE CHEVY
EXPRESS CARGO VAN, OHIO REGISTRATION NUMBER PIL-2378.**

Pursuant to the Fourth Amendment to the United States Constitution, Defendant Isaias Alvarado, through undersigned counsel, hereby moves this Court for an Order suppressing all evidence seized from his 2004 and 2007 vehicles searched on August 15, 2017.

Respectfully submitted,

/s/ Steven S. Nolder
Steven S. Nolder (0037795)
Scott & Nolder Co., LPA
65 E. State Street, Suite 200
Columbus, Ohio   43215
(614) 221-9790
snolder9@gmail.com
Attorney for Isaias Alvarado

**MEMORANDUM**

On August 14, 2017, CPD Detective Michael Williams prepared search warrant affidavits for two vehicles owned by Isaias Alvarado.  Attached hereto as Exhibit A is the search warrant, affidavit in support of the warrant, as well as the search warrant return for Alvarado's 2004 White

1

Chevy Express Cargo Van, Ohio Registration Number PID-9515. Attached hereto as Exhibit B, is the search warrant, affidavit in support of the warrant, as well as the search warrant return for Alvarado's 2007 White Chevy Express Cargo Van, Registration Number PIL-2378.

Although there were two separate warrants sought for different vehicles, the factual basis articulated in the supporting affidavits to justify the issuance the search warrants was identical. In each affidavit, Detective Williams wrote that:

> [O]n December 5, 2015, The body of Carlos Alexander Serrano-Ramos was discovered buried in the ground in Innis Park, 3000 Innis Rd Columbus, Ohio 43224. An investigation by the Franklin County Coroners Office ruled his death a Homicide. The Columbus Division of Police Homicide Unit immediately opened a case to investigate the Murder.
>
> Concurrently the FBI Central Ohio Violent crimes Task Force began an investigation into the Transnational Criminal Organization called La Mara Salvatrucha or commonly referred to as MS-13. The FBI developed several Confidential Sources with close ties to MS-13 in Central Ohio. Multiple Confidential source's revealed that Carlos Alexander Serrano-Ramos was in the company of several MS-13 members on the day of his Homicide. He was invited to the gangs hangout for a cookout. Once the cookout was completed several MS-13 members along with Carlos Alexander Serrano-Ramos entered a white Chevy panel van owned and driven by Isaias Alvarado. Mr. Alvarado drove the individuals over to Innis Park where they all exited the vehicle. The van then left the area. Mr. Serrano-Ramos was led into the woods by the MS-13 Gang members where they stabbed Mr. Serrano-Ramos with a knife and disposed of his body in the woods. Members of the gang exited the woods and called Isaias Alvarado to pick them up. A Confidential source advised members of the gang were covered with blood as they entered the back of Isaias Alvarado's white Chevy Panel Van and drove away. The gang was joking about not being able to cut Serrano-Ramos head off because the knife kept bending.
>
> During that time Isaias Alvarado owned two white Chevy panel vans.
>
> Titled 05/01/2013 2004 Chevy Express Cargo Van, Ohio

2

>Registration #PID-9515 VIN:   1GCGG25V641170485
>
>Titled 02/19/2014 2007 Chevy Express Cargo Van, Ohio Registration #PIL-2378 VIN: 1GcGG25V371159173
>
>This Search Warrant is requesting permission to search the two vehicles for evidence related to the Homicide of Carlos Alexander Serrano-Ramos.
>
>It is requested this Search Warrant be sealed for 90 days.  This is an ongoing investigation and information contained herein could jeopardize the investigation before its conclusion.

(Exhibits A, p. 4 & B, p. 4, "Affidavit In Support Of Warrant to Search").

Franklin County Municipal Court Judge Eileen Paley issued a search warrant for the 2004 vehicle at 9:40 a.m. and she issued the warrant for the 2007 vehicle four minutes later.   After being seized, both vehicles were subjected to extensive searches and a laundry-list of items were seized and chronicled on the search warrant returns, both of which were filed in the Franklin County Municipal Court.   (Exhibits A, pp. 5-6 & B, pp. 5-6, "Evidence Collected Item Log").

This case is scheduled for trial on January 16, 2018 and Alvarado herein seeks suppression of all items seized from his two vehicles.

I.      **METHOD OF REVIEW.**

A state search warrant being challenged in federal court must be judged by federal constitutional standards.   *Elkins v. United States*, 364 U.S. 206 (1960).    Moreover, this Court's review is limited to the four corners of the search warrant application and the affidavit.   *Spinelli v. United States*, 393 U.S. 410, 413, n.3 (1969).

II.     **STANDING.**

Isaias Alvarado must shoulder the burden of establishing that his own Fourth Amendment rights were violated by an unreasonable search and seizure.   *Rakas v. Illinois*, 439 U.S. 128, 130,

3

n.1 (1978). In order to establish standing to litigate a Fourth Amendment claim, Alvarado must establish that he had a subjective expectation of privacy in the area that was searched. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998). To prove this subjective expectation of privacy, Alvarado must show that he sought to preserve something as private. *Id*.

Additionally, Alvarado must also prove that his expectation of privacy was one that society was prepared to recognize as reasonable. *Id.* Thus, the question of whether Alvarado can claim the protection of the Fourth Amendment "hinges not upon a property right in the invaded place, but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143.

In this case, the search warrant affidavits clearly state the two vehicles were owned by Isaias Alvarado. These vehicles and their contents are locations in which Alvarado had subjective expectations of privacy and the public has continually found these expectations are objectively reasonable. *United States v. Aguirre*, 839 F.2d 854 (1st Cir. 1988); See generally, Fisanick, *Vehicle Search Law Deskbook*, pp. 10-11. Consequently, Alvarado has standing to assert the violations of his Fourth Amendment right to remain free from unreasonable searches and seizures.

**III. SEARCH OF THE 2004 AND 2007 VEHICLES PURSUANT TO A WARRANT.**

Isaias Alvarado contends the search warrants were defective because: (1) they were issued based on "stale" information and (2) the affidavits were conclusory and devoid of reliable information from which Judge Paley could conclude that probable cause existed to believe that contraband would be found in the vehicles.

### A. STALENESS.

As a preliminary matter, stale information cannot be used in a probable cause determination. *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998). Moreover, the staleness inquiry depends heavily on the "inherent nature of the crime." *Id.* In analyzing whether information is stale, the Sixth Circuit considers the following four factors: "(1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Abboud,* 438 F.3d 554, 572–73 (6th Cir.2006)

In this case, Judge Paley authorized the search of both vehicles for:

> [W]eapons, ammunition, spent shell casings, bladed objects, DNA evidence, blood, fingerprints, photographs of the interior and exterior of the vehicle, cell phones, computers, and devices capable of on-line communication, electronic storages devices or media, legers books notes or any other articles relating to Gang affiliation, clothing, towels, and wash cloths, and any other evidence of the crime of murder and any crimes yet known.

(Exhibits A, p. 2 & B, p. 2).

As noted above, the question of staleness is heavily dependent on the "inherent nature of the crime." *United States v. Henson*, 848 F.2d 1374 (6th Cir. 1988). In *United States v. Kemper*, 375 F.Supp. 2d 551, 555 (E.D. KY 2005), the district court held that the crime of murder was not of a continuous nature. This Court reached the same conclusion in *United States v. Jefferson*, 717 F. Supp. 2d 790, 802 (S.D. OH 2010).

In *Kemper*, the murder under investigation occurred about three months before the search warrant issued. *Kemper*, 375 F. Supp.2d at 555. Nonetheless, a detective succeeded in securing a search warrant for evidence of the murder and the court ruled that the three months between the

5

crime and the issuance of the search warrant rendered the warrant stale. *Id*. In applying the staleness factors in *Kemper*, the court ruled that:

> [t]he evidence sought was evidence pertaining to an alleged homicide. It was an unreasonable expectation that officers would discover a .45 caliber pistol allegedly used in the murder and other evidence connected to a murder more than two months after the alleged homicide. See *United States v. Charest*, 602 F.2d 1015 (1st Cir. 1979) ("A sixteen day lag between the commission of a murder and the issuance of a search warrant for a murder weapon of this type is too long for a finding of probable cause that the gun will still be located on defendant's premises.").

*Id*.

Finally, the district court ruled that the good faith exception to the exclusionary rule did not rescue the defective warrant and suppressed the evidence. *Id*. at 556.

In Alvarado's case, the murder under investigation occurred on December 5, 2015 while the search warrants did not issue until August 14, 2017, more than twenty months after the crime. This is seventeen months longer than the delay in *Kemper*. Applying the four *Abboud* factors, this Court's decision must be guided by *Kemper*.

First, the murder under investigation was not a continuous crime. Next, Alvarado is "entrenched" as he has lived in Central Ohio for more than fifteen years and owned the 2004 vehicle since May 1, 2013 and the 2007 vehicle since February 19, 2014. Third, the evidence sought in the murder investigation was perishable and easily transferable and it was unreasonable for Detective Williams to believe that any evidence of the murder would be discovered in either van twenty months after the fact. Finally, the location to be searched was a mere criminal forum of convenience—vehicles that had been used for personal and work purposes during the twenty months after the murder.

6

Adding to the staleness problem, Detective Williams failed to set forth the specific date on which the unnamed informants provided the information so the reader is left wondering how long he was in possession of this information. More troubling, the affidavit does not set forth any reason why Williams believed that evidence of a crime would be located in these vehicles twenty months after the crime under investigation occurred. Finally. Williams failed to set for the basis of knowledge of these informants—was it the product of personal observation or hearsay statements.

### B. SEARCH WARRANT AFFIDAVIT WAS DEFECTIVE BECAUSE THE RELIABILITY OF THE INFORMANTS WAS UNKNOWN.

In addition to the warrants being defective because they were issued on stale information, they are also defective because the reliability of the informants is unknown and Detective Williams did not engage in any investigation to corroborate what he was told.

An essential component of the warrant requirement is that the search warrant affidavit must set forth the affiant's probable cause to believe that contraband will be found at a particular location. *Steagald v. United States*, 451 U.S. 204, 212-13 (1981). The Sixth Circuit has determined that probable cause requires that, "given all of the circumstances set forth in the affidavit before the magistrate, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Keszthelyi*, 308 F.3d 557, 567 (6th Cir. 2002).

In *Illinois v. Gates*, 462 U.S. 213 (1983), the Court jettisoned the notion that a probable cause determination was subject to a rigid set of rules or testing; instead, the Court adopted a flexible inquiry for determining probable cause where an anonymous informant's tip is the source. The Court held that:

7

> [P]robable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules. Informant's tips doubtless come in many shapes and sizes from many different types of persons. . . . Informant's tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability. Rigid legal rules are ill-suited to an area of such diversity. One simple rule will not cover every situation.
>
> ******
>
> There are persuasive arguments against according [the elements of the "two-pronged test" – "veracity" or "reliability" and "basis of knowledge" of the informant-] independent status. Instead, they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

*Id.* at 232-33, (citations and footnotes omitted).

Even after the *Gates* Court adopted the flexible "totality of the circumstances" test, it nonetheless provided examples of cases which even under the new regime "illustrated the limits beyond which a magistrate may not venture in issuing a warrant." *Id*. at 239. One example to which the Court pointed was when the warrant was based upon a "wholly conclusory statement" which provided the magistrate with no basis at all for making an informed judgment. *Id*. This was the nature of problem confronted by the Court in *Aguilar v. Texas*, 378 U.S. 108 (1964). However, even under the new flexible regime, an officer's conclusory probable cause statement that "affiants have received reliable information from a credible person and do believe that heroin is stored in the home," would be insufficient to provide the magistrate with probable cause to issue the warrant. *Gates*, 462 U.S. at 239.

Furthermore, another decision of the Court that survived the adoption of the totality of the circumstances test was *Nathanson v. United States*, 290 U.S. 41 (1933). In *Nathanson*, the Court

8

held that the affiant's sworn statement that "he has cause to suspect and does believe that liquor illegally brought into the United States is housed on certain premises" did not constitute probable cause because it was a wholly conclusory statement which failed to provide the magistrate with a substantial basis upon which to issue the warrant. Even under the new totality of the circumstances test, the Court in *Gates* noted that the affidavit in *Nathanson* would be insufficient; to rule otherwise would mean that the magistrate's determination would have improperly been a "mere gratification of the bare conclusions of others." *Gates*, 462 U.S. at 239.

Although the affiants in both *Aguilar* and *Nathanson* alluded to their information as being "reliable," the affidavits lacked any indicia of specificity or corroboration to buoy such a bald claim. As the Court in *Gates* makes clear, these deficiencies are not to be ignored under the totality of the circumstances test. Additionally, corroborative police efforts is a necessary requirement even under the totality of the circumstances regime.

In sum, the *Gates* Court held that the following two factors were significant for issuing courts to evaluate in determining whether an anonymous informant's tip constituted probable cause: (1) an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand;" *Id*. and (2) the extent to which the tip was corroborated by the police officer's own investigation. *Id*. at 244.

The Sixth Circuit wrestled with this issue in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000). In *Allen*, the *en banc* court ruled that: "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found." *Id*. at 976. Therefore, an affidavit which includes a tip from

9

a named informant that has been proven reliable may support a finding of probable cause in the absence of any corroboration.  *Id*.  Conversely, an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, only if it includes sufficient corroborating information.  *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000).

In *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1998), the court held that even though a confidential informant provided a tip that drug activity was occurring at a residence, the affidavit was deficient because it did not attest to any "substantive independent investigative actions to corroborate the informant's claims, such as surveillance of the residence for undue traffic or a second controlled purchased made with officers viewing." *Id*. at 1379.  Similarly, in *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993), the court suppressed evidence even though an anonymous tipster reported his personal observation of drug trafficking-type activities at a residence.  The affidavit was deficient because the affiant did not notice anything out of the ordinary at the residence during his two-night surveillance.  Furthermore, the affiant's tracing of vehicles that were located at the residence did not increase the probability that drugs would be found at the residence.  *Id*. at 1365.

In *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994), one of the search warrants at issue attempted to demonstrate the affiant had probable cause to believe that evidence of a crime would be found at a certain location through the following sentence:  "[b]ased on his training and experience, [he] believe[d] . . . that it is not uncommon for the records, etc. of such [drug] distribution to be maintained in bank safe deposits boxes." *Id*. at 1097.   The Sixth Circuit ruled that:

10

> [w]hile an officer's 'training and experience' may be considered in determining probable cause, (citations omitted) it cannot substitute for the lack of evidentiary nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity.  Officer Ideker [the affiant] did not have anything more than a guess that contraband or evidence of a crime would be found in the boxes, and therefore the first warrant should not have been issued.

*Id*. at 1097-98.

Therefore, as has been demonstrated, even after *Gates* modified the rigid test announced in *Aguilar* and *Spinelli*, both the reliability and basis of knowledge of the informant as well as police corroboration are critical issues that the affiant must address in his search warrant affidavit. However, under the new regime, these issues are to be considered in light of the "totality of the circumstances."

In Alvarado's case, the "multiple confidential sources" were never identified. Additionally, Detective Williams made no comment about their reliability or even how long they had been informants.  Detective Williams does not state when he came into possession of the information that he placed in the affidavit or the informant's basis of knowledge for these facts— were they witnessed or the product of hearsay?  Detective Williams makes no effort to state why he believed that evidence of a crime would still be found in these vehicles when the crime under investigation happened twenty months before the warrants issued.  Detective Williams does not even make a statement similar to that found in *Schultz* and articulate why his training led him to conclude evidence of murder would be found in the van. Finally, there is no information in the search warrant affidavits about any investigation that Detective Williams attempted to corroborate the information that his unnamed and untested informants provided.

Mr. Alvarado submits the search warrants are defective because they do not set forth probable cause to believe that contraband would be found inside either vehicle twenty months after

the murder. They do not attest to the reliability of the informants and make no mention of the investigation that Detective Williams conducted to corroborate the information he received from the informants.

In short, the search warrant affidavits are not "rich" in relevant detail. The affidavits in their quantity and quality did not even approach the detail provided in *Gates*. In *Gates*, nearly every detail in the anonymous tipster's letter was confirmed whereas the case in Alvarado's case, the reader is left to wonder if the informants are reliable, how long they had been informants, and whether additional investigation was needed to verify important aspects of the informants' allegations before the search warrant issued.

### IV.  GOOD FAITH EXCEPTION.

If this Court determines that the searches are both were unreasonable, it must next determine if the good faith exception to the exclusionary rule insulated the searches from reproach. Subject to a few exceptions, the exclusionary rule requires the suppression of evidence obtained in violation of the Fourth Amendment. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). However, the Supreme Court has carved out a "good faith exception" to this general rule holding that the exclusionary rule does not apply to evidence seized by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is subsequently found to be invalid. *United States v. Leon*, 468 U.S. 897, 922 (1984).

However, in *Leon*, the Supreme Court also identified four scenarios where the good faith exception would be inappropriate and that suppression of evidence would nonetheless be required:

> (1) if the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2)  the issuing

12

>>magistrate failed to act in a neutral and detached fashion and merely served as a rubber stamp for the police; (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or where the warrant application was supported by nothing more than a bare bones affidavit; and (4) if the warrant was facially deficient in that it failed to particularize a place to be searched or the things to be seized.

*Id*. at 914-15.

Isaias Alvarado submits that the second and third exceptions to the *Leon* rule apply to his case mandating the suppression of the evidence seized from his vehicles.

The second exception applies as Judge Paley failed to act in a neutral and detached manner before issuing the warrants and simply rubber-stamped the documents. Exhibits A and B were signed four minutes apart. Two minutes after presumably reviewing Exhibit A and signing her name three times, she accomplished the same functions to issue a search warrant for 3350 Anita Street. (Exhibit C). Consequently, within the course of four minutes, Judge Paley was presented, reviewed, and issued three search warrants. Quite a feat when one considers these are three different applications!

More importantly, as noted above, the facts in the affidavit are clearly stale, there is no attestation to the reliability of the informants, there are no time parameters as to when Detective Williams came into possession of the information from the informants, there is no information in the affidavits as to the basis of the informants' knowledge, and Detective Williams made no effort to further investigate the informants' claims before preparing the affidavits. These deficiencies are glaring and a judicial officer acting in a neutral and detached manner would have caught any of these five fundamental defects and demanded supplementation before issuing the warrants.

The third exception also applies and Detective Williams' reliance on the validity of the warrant was objectively unreasonable because it was a "bare bones" affidavit. The critical inquiry in determining whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable is "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922, n.23.

An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge is a "bare bones" affidavit. *Aguilar*, 378 U.S. at 114. In every sense of the phrase, the affidavit prepared by Detective Williams was a "bare bones" affidavit because of its conclusory nature thereby rendering suppression appropriate under the third exception to the *Leon* rule. *Weaver*, 99 F.3d at 1380-381.

It is important to note that *Leon's* good-faith inquiry is confined to an objective standard. *Leon*, 468 U.S. at 920, n.20. Consequently, Detective Williams' subjective knowledge, good faith, and the circumstances leading to his reliance on stale information are irrelevant; instead, *Leon* demands that a police officer's reliance upon a search warrant be objectively reasonable. *United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005); *United States v. Hython*, 443 F.3d 480, 488 (6th Cir. 2006).

Any reasonably well-trained police officer would have recognized that evidence would be suppressed when the warrant affidavit was stale. *Id.* at 489. Consequently, Detective Williams was not acting in objective good faith when he searched either vehicle thereby making suppression of the evidence an appropriate remedy under the third exception to the *Leon* rule. *Corrigan*, 809

14

F. Supp. at 572.

Detective Williams undoubtedly knew that he must make some attempt to corroborate the claims of the unnamed informants.  Nonetheless, there is nothing in the search warrant affidavit about Detective Williams' corroborative efforts.  Finally, Detective Williams must detail why he believes his sources are reliable so the issuing court may judge the wisdom of this belief.  The numerous deficiencies of the affidavit that have been detailed need not be repeated.  However, it bears repeating that the glaring nature of these deficiencies make any reliance on the warrant by a "well-trained" officer unreasonable.

In sum, a reasonably well-trained officer "would have known that the search was illegal despite the magistrate's authorization."  *Leake*, 998 F.2d at 1367.

## V.  CONCLUSION.

For any or all of the reasons articulated herein, Defendant Isaias Alvarado herein moves this Court for an Order suppressing all evidence seized from the 2004 and 2007 vehicles that he owned.

    Respectfully submitted,

    /s/   Steven S. Nolder
    Steven S. Nolder   (0037795)
    Scott & Nolder Co., LPA
    65 E. State Street, Suite 200
    Columbus, Ohio   43215
    (614) 221-9790
    snolder9@gmail.com
    Attorney for Isaias Alvarado

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the Motion to Suppress Physical Evidence was served electronically upon AUSAs Jessica Kim and Brian Martinez this 5th day of October 2017.

                                    /s/ Steven S. Nolder
                                  Steven S. Nolder    (0037795)
                                  Attorney for Isaias Alvarado